**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Robert Simons, individually and on behalf of all others similarly situated,<br><br>  Plaintiff,<br><br>                v.<br><br>AMC Entertainment Holdings, Inc.,<br><br>  Defendant. | Civil Action No. 1:25-cv-9042<br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF**
**FEDERAL SECURITIES LAWS**

Plaintiff Robert Simons, on behalf of himself and all other similarly situated former holders of AMC Preferred Equity Units ("APEs" or "Preferred Stock") of AMC Entertainment Holdings, Inc. ("AMC" or the "Company" or "Defendant") brings this Complaint (the "Complaint") against AMC. The allegations of the Complaint are based on the knowledge of Plaintiff as to himself and on information and belief, including based on the investigation of counsel and review of publicly available information, as to all other matters.

**NATURE OF THE ACTION**

1. This is a federal securities class action brought on behalf of all persons and entities who purchased or otherwise acquired AMC Preferred Equity Units ("APEs") during the Class Period and were damaged thereby. Among the Class are those who held APEs immediately prior to the August 25, 2023 conversion and were thereby excluded from receiving the Special Dividend issued to common shareholders on August 28, 2023.

2. The Class Period begins on August 18, 2022, the date of AMC's false and misleading public assurances regarding economic equivalence, and ends on November 1, 2023, when the truth was first publicly revealed.

3. On August 18, 2022, AMC filed a Frequently Asked Questions ('FAQ') document with the U.S. Securities and Exchange Commission ('SEC') that made unqualified statements to investors that each APE was "designed to have the same economic value as a share of Class A Common Stock" and "designed to have the same voting rights as a share of common stock." AMC further stated that, because of this design, "in theory, the common stock and AMC Preferred Equity unit should have similar market values and the impact of the AMC Preferred Equity unit dividend should be similar to a 2/1 stock split."

4. These statements were materially false and misleading because the rights of APE holders were in fact constrained by the Certificate of Designations ("COD") for AMC's preferred stock, which contained a highly-technical loophole allowing AMC to exclude APE holders from distributions occurring after conversion to common stock. This loophole was subtle, non-obvious, and undisclosed in the FAQ or other public investor communications.

5. The harm to APE holders accrued on August 28, 2023 when, after converting the APEs to AMC common stock, the Company delivered a special dividend of common stock exclusively to the prior holders of common stock (the "Special Dividend"), pursuant to a settlement of litigation brought on behalf of common shareholders.

6.     The fraudulent nature of AMC's earlier statements was finally revealed when AMC, in a November 1, 2023 motion to dismiss a breach of contract action brought by APE holders, openly argued that APE holders had no right to participate in the Special Dividend. AMC's legal arguments constituted a plain admission that APEs were not economically equivalent to common shares and therefore a plain admission of AMC's fraud.

**JURISDICTION AND VENUE**

7.     This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78aa, and 28 U.S.C. §§ 1331 and 1337, because this action arises under the federal securities laws.

8.     Venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391(b) because Defendant transacts business in this District and its common stock is listed and traded on the New York Stock Exchange, which is headquartered in this District.

9.     In connection with the acts alleged in this Complaint, Defendant, directly or indirectly, used the means and instrumentalities of interstate commerce, including the United States mails, interstate telephone communications, and the facilities of the national securities markets.

**PARTIES**

10.     Plaintiff is an investor who purchased or otherwise acquired APE units during the Class Period and suffered damages as a result of the wrongful conduct alleged herein.

11. Defendant AMC is a Delaware corporation with principal executive offices at One AMC Way, 11500 Ash Street, Leawood, Kansas. AMC's common stock trades on the New York Stock Exchange under the ticker symbol "AMC".

**CLASS ALLEGATIONS**

12. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons and entities who purchased or otherwise acquired AMC Preferred Equity Units ("APEs") during the Class Period and were damaged thereby, including those who held APEs immediately prior to the conversion of APEs to common stock on August 25, 2023 and were thereby excluded from receiving the Special Dividend issued to common shareholders on August 28, 2023.

13. Excluded from the Class are Defendant, its officers and directors, members of their immediate families, and their legal representatives, heirs, successors, or assigns.

14. The members of the Class are so numerous that joinder of all members is impracticable. The exact number of Class members is unknown but can be ascertained from AMC's transfer agent and trading records.

15. Plaintiff's claims are typical of the claims of the other members of the Class and arise from the same course of conduct by Defendant.

16. Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel competent and experienced in securities litigation.

17. Common questions of law and fact predominate over questions affecting only individual Class members and include whether Defendant's statements were false or misleading, whether Defendant acted with scienter, and the proper measure of damages.

**FACTUAL BACKGROUND**

A. AMC Issues APEs and Makes Assurances of Economic Equivalence

18. In 2020, the COVID-19 pandemic prevented the American public from gathering in public spaces, including in movie theaters, which negatively impacted the revenues and operations of AMC. By late 2020, numerous hedge funds took widely reported short positions in AMC's stock. In response, retail investors rallied around the Company and took positions in its stock in an effort to defeat the short sellers. By June 2021, more than 80% of AMC's shares were held by approximately 4.1 million retail investors.

19. To capitalize on the higher stock price driven by retail investment, AMC sold nearly all of the Company's remaining authorized shares of Common Stock to raise new funding. Thereafter, AMC proposed on multiple occasions to amend the Company's Certificate of Incorporation to authorize the issuance of additional shares of Common Stock, but AMC twice abandoned seeking shareholder approval for this increase – first by postponing the May 24, 2021 Annual Meeting and then on July 6, 2021 by withdrawing the proposal from consideration at the rescheduled Annual Meeting.

20. On August 4, 2022, AMC announced the creation of AMC Preferred Equity Units ("APEs"), each representing one one-hundredth of a share of Series A Convertible Participating Preferred Stock. As shown in the comparison table included in the 8-K, each APE was described as having the same voting power and equivalent

economic rights as a share of AMC Class A common stock, including eligibility to receive dividends and distributions on an as-converted basis.

21. AMC's principal motivation for creating the APE class was to allow itself the means to raise equity financing in the marketplace. The APE class was intended to serve as a substitute for the Company's common stock, equivalent to common stock in all material respects.

22. On August 18, 2022, AMC filed a Form 8-K with the SEC, attaching an "FAQ" document regarding the issuance of AMC Preferred Equity Units as a special dividend.

23. In Answer to Question 1, AMC stated: "Each AMC Preferred Equity unit (sometimes referred to herein as 'APEs') is designed to have the same economic value as a share of Class A Common Stock... Each AMC Preferred Equity unit is designed to have the same voting rights as a share of common stock."

24. In Answer to Question 11, AMC stated: "Because the AMC Preferred Equity unit is designed to have the same economic value and voting rights as a share of common stock, in theory, the common stock and AMC Preferred Equity unit should have similar market values and the impact of the AMC Preferred Equity unit dividend should be similar to a 2/1 stock split."

25. These statements were clear and direct. They created a reasonable expectation among investors that APEs and common shares were economically interchangeable.

26. Indeed, the vast majority of AMC's shareholder base during the relevant period consisted of retail investors, many of whom lacked the legal training or specialized

financial expertise necessary to identify and interpret the subtle, highly-technical provisions in the Certificate of Designations that AMC later invoked to exclude APE holders from the Special Dividend. By contrast, AMC's unequivocal public statement that APEs were "designed to have the same economic value" and "the same voting rights" as common stock was direct, understandable, and intended to be relied upon by such investors in evaluating the rights attached to their securities.

27. On August 22, 2022, APE units were issued to the then-current holders of Common Stock as a special dividend. Each AMC Shareholder was issued one APE unit for each AMC Common Share held at the time, in effect resulting in a two-for-one stock split. A total of approximately 516 million APE units were issued on August 22, 2022. APE units began trading on the New York Stock Exchange on that same day.

28. On September 26, 2022, the Company announced that it would issue additional APE units through an "at the market" issuance program to be led by Citigroup Global Markets.

B. The Antara Transaction, Scheduled Conversion Vote and Common Stock Class Action

29. On December 22, 2022, AMC announced it had entered into a multi-step agreement allowing a single investor, Antara Capital L.P. ("Antara"), to obtain over 257 million APEs, representing almost 28% of all outstanding APEs, at an average cost of $0.66 per unit. The agreement with Antara also required AMC to propose an increase in the number of authorized shares of Common Stock and a conversion of all existing APEs into Common Stock on a 1-for-1 basis, and AMC itself sought a subsequent 1-to-10 reverse stock split of the Common Stock (the "Proposals"). Antara also signed a voting agreement to support the Proposals.

30.     In January 2023, AMC set a shareholder vote on the Proposals for March 14, 2023.

31.     On February 20, 2023, two class actions were filed in the Delaware Court of Chancery by holders of AMC common stock - Allegheny County Employees' Retirement System v. AMC Entertainment Holdings, Inc., et al., and Munoz, et al. v. Aron, et al. - alleging breach of fiduciary duty and, in the Allegheny case, violation of 8 Del. C. § 242(b)(2) in connection with the issuance of APEs and related shareholder proposals. The suits sought injunctive relief, money damages, and, in the Allegheny case, a separate class vote for Class A stockholders on the proposals. On March 2, 2023, the Court consolidated the two cases for all purposes.

C.  The Settlement and Special Dividend to Common Shareholders

32.     On April 3, 2023, the Company announced a proposed settlement of the class action, under which it was agreed that common stockholders would receive the Special Dividend, i.e., a one-time distribution of one additional common share for every 7.5 shares held.

33.     The settlement, which included the special dividend of one share of common stock for every 7.5 shares held, to be delivered to common shareholders, was ultimately approved by the Delaware Chancery Court on August 11, 2023.  The holders of the APEs were excluded from the Special Dividend.

34.     AMC set August 24, 2023 as the record date for the Special Dividend, converted all APEs on August 25, 2023, and delivered the Special Dividend exclusively to the prior holders of common stock on August 28, 2023.

35. On August 24, 2023, AMC stock closed at $14.37 per share. On that date, at least 92.9 million of the outstanding post-conversion shares had been APE shares prior to conversion, and each such share was deprived of a Special Dividend valued at $1.916 based on the closing price. The resulting monetary damages from AMC's fraud are therefore at least $178 million, plus prejudgment interest.

D. Revelation of Fraud in AMC's Motion to Dismiss

36. On August 14, 2023, a putative class action was filed in the Delaware Court of Chancery on behalf of holders of AMC Preferred Equity Units ("APEs"), alleging that AMC breached the Certificate of Designations governing the preferred stock by approving a settlement with common stockholders that allegedly deprived APE holders of contractual rights.

37. In a November 1, 2023 motion to dismiss the breach of contract claim brought by APE holders, AMC stated: "By their plain terms, Sections III and VI of the Certificate of Designations provided holders of AMC Preferred Equity Units with certain rights before the Conversion occurred. Those provisions do not apply to the Settlement Payment because it was issued after the Conversion."

38. AMC further argued: "Section III applies to cash dividends or distributions, and the Settlement Payment was a stock distribution, not cash. Section VI applies only to issuances of additional shares prior to the Conversion, which did not occur here."

39. AMC emphasized: "The preferred are not entitled to any dividend or distribution under Section III(a) of the Certificate. The record date does not determine when the dividend or distribution is issued; it is irrelevant to that question."

40. These statements constitute a plain admission that APEs were not, and never were, the economic or voting-rights equivalent of the common shares in the circumstances at issue, contradicting AMC's categorical statements in the FAQ.

41. The Delaware Chancery Court accepted the Company's arguments, and the breach of contract class action case was dismissed on October 2, 2024.

E. The Market for AMC Securities

42. The market for AMC securities, including APEs, was active, open and well-developed throughout the Class Period. AMC securities traded on the New York Stock Exchange ("NYSE") with high daily trading volume, extensive participation by retail and institutional investors, active market-makers, and broad dissemination of AMC information via news outlets, analyst reports, and social media platforms. As a result, the prices of AMC securities promptly incorporated publicly available information concerning the Company.

43. Because Defendant's materially false and misleading statements were public and concerned AMC's business and the rights of AMC securities, Plaintiff and the Class are entitled to a presumption of reliance under the fraud-on-the-market doctrine.

**COUNT I: Violation of Section 10(b) of the Exchange Act and Rule 10b-5**

44. Plaintiff repeats and realleges each allegation above as if fully set forth herein.

45. **Material Misrepresentation or Omission** – Defendant, through its August 18, 2022 Form 8-K and attached FAQ, made unqualified statements that each AMC Preferred Equity Unit ("APE") was "designed to have the same economic value as a share of Class A Common Stock" and "the same voting rights as a share of common

stock," and that, "in theory," common stock and APEs "should have similar market values" and the APE dividend "should be similar to a 2/1 stock split." These statements were materially false and misleading because the Certificate of Designations contained an undisclosed highly-technical loophole that allowed AMC to exclude APE holders from post-conversion distributions, including the Special Dividend. Defendant also omitted to disclose the existence and effect of these provisions, rendering its statements misleading.

46.     **Scienter** – Defendant acted with scienter in that it knew, or was reckless in not knowing, that the Certificate of Designations permitted such exclusion and that its public statements created a materially false impression of economic equivalence. The loophole was known to AMC's officers, directors and attorneys at the time the statements were made.  Further, as APE was the Company's only means of raising equity financing, the Company had a strong motive to mislead investors to support the marketability and acceptance of APEs.  Defendant's November 1, 2023 admission confirms that AMC knew or recklessly disregarded that its statements regarding economic equivalence were false when made.

47.     **In Connection with the Purchase or Sale of Securities** – Defendant's misstatements and omissions were made in connection with the issuance, purchase, and sale of APEs and AMC common stock, both of which are securities under the Exchange Act. The false assurances were disseminated in SEC filings and other public communications intended to influence the market for these securities.

48.     **Reliance** – Plaintiff and the Class relied on the integrity of the market for AMC securities. In purchasing or continuing to hold APEs, Plaintiff and the Class relied on the belief that the public market price reflected all publicly available information,

including AMC's categorical assurances of economic equivalence between APEs and common stock.  Plaintiff and the Class continued to hold APEs, purchased APEs or refrained from selling them, in the belief that they would receive the same distributions as common shareholders, including any special dividends declared before conversion and settled after conversion. This reliance was reasonable in light of Defendant's unequivocal public statements and the absence of any disclosure that the Certificate of Designations contained provisions allowing exclusion of APE holders from such distributions.

49. **Economic Loss** – Plaintiff and the Class suffered economic loss on August 28, 2023, when AMC delivered a Special Dividend of one share of common stock for every 7.5 shares held **exclusively** to the former holders of AMC common stock, and denied the same dividend to the former holders of APEs. In addition, Plaintiff and the Class suffered losses when the market price of AMC securities was artificially inflated by Defendant's misrepresentations and subsequently declined.  Based on AMC's closing price of $14.37 on that date, the value of the dividend withheld from the converted APE shares was approximately $1.916 per share, resulting in damages to the Class of at least $178 million, plus prejudgment interest.

50. **Loss Causation** – Defendant's misrepresentations and omissions were the direct and proximate cause of Plaintiff's and the Class's losses. The truth was revealed through AMC's November 1, 2023 motion to dismiss in the Delaware Chancery Court, in which AMC admitted that APE holders had no right to participate in the Special Dividend. This disclosure corrected the market's prior misunderstanding, causing the value of APE-derived holdings to be diminished by the exclusion from the dividend.  The corrective nature of this disclosure included revealing Defendant's prior knowledge of

the disparity in rights between APEs and common stock, facts that were previously concealed and not reasonably discoverable by investors.

51. By reason of the foregoing, Defendant violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, and is liable to Plaintiff and the Class for damages in an amount to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and all members of the Class, respectfully requests that the Court enter judgment in his favor and against Defendant AMC Entertainment Holdings, Inc., as follows:

a. Certifying this action as a class action under Rule 23;

b. Appointing Plaintiff as Class Representative and appointing Plaintiff's counsel as Class Counsel;

c. Awarding damages to Plaintiff and the Class;

d. Awarding pre- and post-judgment interest;

e. Awarding reasonable attorneys' fees and costs;

f. Awarding such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: Suffolk County, New York
       October 31, 2025

        Respectfully submitted,

_____
Frank Iacono
Iacono Law LLC
Attorney for Plaintiff
6 Donald Court West
Blue Point, NY 11715
917 685 0537
fiacono@iacono-law.com