**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Robert Simons,<br><br>    Plaintiff,<br><br>                    v.<br><br>AMC Entertainment Holdings, Inc.,<br><br>    Defendant. | Civil Action No. 1:25-cv-9042<br><br><br>**DEMAND FOR JURY TRIAL** |

### FIRST AMENDED COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS, MASSACHUSETTS COMMON LAW FRAUD, AND MASSACHUSETTS COMMON LAW NEGLIGENT MISREPRESENTATION

Plaintiff Robert Simons, a former holder of AMC Preferred Equity Units ("APEs" or "Preferred Stock") of AMC Entertainment Holdings, Inc. ("AMC" or the "Company" or "Defendant"), brings this Complaint (the "Complaint") against AMC.  The allegations of the Complaint are based on the knowledge of Plaintiff and on information and belief, including based on the investigation of counsel and review of publicly available information.

### NATURE OF THE ACTION

1. This is a federal and Massachusetts securities and common-law fraud action brought by Plaintiff individually, arising from his purchase and holding of AMC Preferred Equity Units ("APEs") from December 2020 through August 2023 and the damages he suffered thereby.  Plaintiff held APEs immediately prior to the August 25, 2023 conversion and was thereby excluded from receiving the Special Dividend issued to common shareholders on August 28, 2023.

2.      AMC's false and misleading public assurances regarding economic equivalence were made on August 18, 2022, and the truth was first publicly revealed on November 1, 2023.

3.      On August 18, 2022, AMC filed a Frequently Asked Questions ('FAQ') document with the U.S. Securities and Exchange Commission ('SEC') that made unqualified statements to investors that each APE was "designed to have the same economic value as a share of Class A Common Stock" and "designed to have the same voting rights as a share of common stock." AMC further stated that, because of this design, "in theory, the common stock and AMC Preferred Equity unit should have similar market values and the impact of the AMC Preferred Equity unit dividend should be similar to a 2/1 stock split."

4.      These statements were materially false and misleading because the rights of APE holders were in fact constrained by the Certificate of Designations ("COD") for AMC's preferred stock, which contained a highly-technical loophole allowing AMC to exclude APE holders from distributions occurring after conversion to common stock. This loophole was subtle, non-obvious, and undisclosed in the FAQ or other public investor communications.

5.      The harm to APE holders accrued on August 28, 2023 when, after converting the APEs to AMC common stock, the Company delivered a special dividend of common stock exclusively to the prior holders of common stock (the "Special Dividend"), pursuant to a settlement of litigation brought on behalf of common shareholders.

6.      The fraudulent nature of AMC's earlier statements was finally revealed when AMC, in a November 1, 2023 motion to dismiss a breach of contract action brought by APE holders, openly argued that APE holders had no right to participate in the Special Dividend. AMC's legal arguments constituted a plain admission that APEs were not economically equivalent to common shares and therefore a plain admission of AMC's fraud.

**JURISDICTION AND VENUE**

7.      This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78aa, and 28 U.S.C. §§ 1331 and 1337, because this action arises under the federal securities laws.

8.      Venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391(b) because Defendant transacts business in this District and its common stock is listed and traded on the New York Stock Exchange, which is headquartered in this District.

9.      In connection with the acts alleged in this Complaint, Defendant, directly or indirectly, used the means and instrumentalities of interstate commerce, including the United States mails, interstate telephone communications, and the facilities of the national securities markets.

10.     This Court has supplemental jurisdiction over Plaintiff's Massachusetts common-law claims pursuant to 28 U.S.C. § 1367(a) because those claims arise from the same case or controversy as Plaintiff's federal securities law claim and form part of the same nucleus of operative fact.

**PARTIES**

11.     Plaintiff is a resident of the Commonwealth of Massachusetts who purchased AMC common stock and APE units, as described herein, and suffered damages as a result of the wrongful conduct alleged herein.  AMC does business in the Commonwealth of Massachusetts, and the AMC securities at issue were sold to Plaintiff in the Commonwealth of Massachusetts.

12.     Defendant AMC is a Delaware corporation with principal executive offices at One AMC Way, 11500 Ash Street, Leawood, Kansas. AMC's common stock trades on the New York Stock Exchange under the ticker symbol "AMC".

A.  AMC Issues APEs and Makes Assurances of Economic Equivalence

13.     In 2020, the COVID-19 pandemic prevented the American public from gathering in public spaces, including in movie theaters, which negatively impacted the revenues and operations of AMC. By late 2020, numerous hedge funds took widely reported short positions in AMC's stock. In response, retail investors rallied around the Company and took positions in its stock in an effort to defeat the short sellers. By June 2021, more than 80% of AMC's shares were held by approximately 4.1 million retail investors.

14.     To capitalize on the higher stock price driven by retail investment, AMC sold nearly all of the Company's remaining authorized shares of Common Stock to raise new funding.  Thereafter, AMC proposed on multiple occasions to amend the Company's Certificate of Incorporation to authorize the issuance of additional shares of Common Stock, but AMC twice abandoned seeking shareholder approval for this increase – first

by postponing the May 24, 2021 Annual Meeting and then on July 6, 2021 by withdrawing the proposal from consideration at the rescheduled Annual Meeting.

15.    On August 4, 2022, AMC announced the creation of AMC Preferred Equity Units ("APEs"), each representing one one-hundredth of a share of Series A Convertible Participating Preferred Stock. As shown in the comparison table included in the 8-K, each APE was described as having the same voting power and equivalent economic rights as a share of AMC Class A common stock, including eligibility to receive dividends and distributions on an as-converted basis.

16.    AMC's principal motivation for creating the APE class was to allow itself the means to raise equity financing in the marketplace.  The APE class was intended to serve as a substitute for the Company's common stock, equivalent to common stock in all material respects.

17.    On August 18, 2022, AMC filed a Form 8-K with the SEC, attaching an "FAQ" document regarding the issuance of AMC Preferred Equity Units as a special dividend.

18.    In Answer to Question 1, AMC stated: "Each AMC Preferred Equity unit (sometimes referred to herein as 'APEs') is designed to have the same economic value as a share of Class A Common Stock... Each AMC Preferred Equity unit is designed to have the same voting rights as a share of common stock."

19.    In Answer to Question 11, AMC stated: "Because the AMC Preferred Equity unit is designed to have the same economic value and voting rights as a share of common stock, in theory, the common stock and AMC Preferred Equity unit should have

similar market values and the impact of the AMC Preferred Equity unit dividend should be similar to a 2/1 stock split."

20.    These statements were clear and direct. They created a reasonable expectation among investors that APEs and common shares were economically interchangeable.

21.    Indeed, the vast majority of AMC's shareholder base during the relevant period consisted of retail investors, many of whom lacked the legal training or specialized financial expertise necessary to identify and interpret the subtle, highly-technical provisions in the Certificate of Designations that AMC later invoked to exclude APE holders from the Special Dividend. By contrast, AMC's unequivocal public statement that APEs were "designed to have the same economic value" and "the same voting rights" as common stock was direct, understandable, and intended to be relied upon by such investors in evaluating the rights attached to their securities.

22.    On August 22, 2022, APE units were issued to the then-current holders of Common Stock as a special dividend. Each AMC Shareholder was issued one APE unit for each AMC Common Share held at the time, in effect resulting in a two-for-one stock split. A total of approximately 516 million APE units were issued on August 22, 2022. APE units began trading on the New York Stock Exchange on that same day.

23.    On September 26, 2022, the Company announced that it would issue additional APE units through an "at the market" issuance program to be led by Citigroup Global Markets.

B.  The Antara Transaction, Scheduled Conversion Vote and Common Stock Class Action

24. On December 22, 2022, AMC announced it had entered into a multi-step agreement allowing a single investor, Antara Capital L.P. ("Antara"), to obtain over 257 million APEs, representing almost 28% of all outstanding APEs, at an average cost of $0.66 per unit. The agreement with Antara also required AMC to propose an increase in the number of authorized shares of Common Stock and a conversion of all existing APEs into Common Stock on a 1-for-1 basis, and AMC itself sought a subsequent 1-to-10 reverse stock split of the Common Stock (the "Proposals"). Antara also signed a voting agreement to support the Proposals.

25. The Antara-related Proposals, including the 1-for-10 reverse stock split of AMC common stock, were subsequently approved and became effective in late August 2023.

C. Plaintiff's Purchases of AMC and APE Securities

26. Between December 2020 and July 2022, Plaintiff purchased approximately 3,250 shares of AMC common stock for a total purchase price of approximately $81,127.

27. With the August 2022 stock split described above, Plaintiff's 3,250 shares of AMC common stock became 3,250 shares of AMC common stock and 3,250 shares of APE. The purchase price attributable to the 3,250 shares of APE was approximately $40,563.

28. Plaintiff held these 3,250 shares of APE at the time of the reverse stock split described above.

29. Pursuant to the reverse stock split, Plaintiff's 3,250 shares of APE became approximately 325 shares of AMC common stock.

30.    As of market close on August 6, 2026, Plaintiff's 325 shares of AMC common stock were valued at approximately $835, resulting in an unrealized loss of approximately $39,728.

31.    In January 2023, AMC set a shareholder vote on the Proposals for March 14, 2023.

32.    On February 20, 2023, two class actions were filed in the Delaware Court of Chancery by holders of AMC common stock - Allegheny County Employees' Retirement System v. AMC Entertainment Holdings, Inc., et al., and Munoz, et al. v. Aron, et al. - alleging breach of fiduciary duty and, in the Allegheny case, violation of 8 Del. C. § 242(b)(2) in connection with the issuance of APEs and related shareholder proposals. The suits sought injunctive relief, money damages, and, in the Allegheny case, a separate class vote for Class A stockholders on the proposals. On March 2, 2023, the Court consolidated the two cases for all purposes.

D.  The Settlement and Special Dividend to Common Shareholders

33.    On April 3, 2023, the Company announced a proposed settlement of the class action, under which it was agreed that common stockholders would receive the Special Dividend, i.e., a one-time distribution of one additional common share for every 7.5 shares held.

34.    The settlement, which included the special dividend of one share of common stock for every 7.5 shares held, to be delivered to common shareholders, was ultimately approved by the Delaware Chancery Court on August 11, 2023.  The holders of the APEs were excluded from the Special Dividend.

35. AMC set August 24, 2023 as the record date for the Special Dividend, converted all APEs on August 25, 2023, and delivered the Special Dividend exclusively to the prior holders of common stock on August 28, 2023.

36. As a result of AMC's fraud, Plaintiff's APE shares were deprived of the Special Dividend.

E. Revelation of Fraud in AMC's Motion to Dismiss

37. On August 14, 2023, a putative class action was filed in the Delaware Court of Chancery on behalf of holders of AMC Preferred Equity Units ("APEs"), alleging that AMC breached the Certificate of Designations governing the preferred stock by approving a settlement with common stockholders that allegedly deprived APE holders of contractual rights.

38. In a November 1, 2023 motion to dismiss the breach of contract claim brought by APE holders, AMC stated: "By their plain terms, Sections III and VI of the Certificate of Designations provided holders of AMC Preferred Equity Units with certain rights before the Conversion occurred. Those provisions do not apply to the Settlement Payment because it was issued after the Conversion."

39. AMC further argued: "Section III applies to cash dividends or distributions, and the Settlement Payment was a stock distribution, not cash. Section VI applies only to issuances of additional shares prior to the Conversion, which did not occur here."

40. AMC emphasized: "The preferred are not entitled to any dividend or distribution under Section III(a) of the Certificate. The record date does not determine when the dividend or distribution is issued; it is irrelevant to that question."

41.    These statements constitute a plain admission that APEs were not, and never were, the economic or voting-rights equivalent of the common shares in the circumstances at issue, contradicting AMC's categorical statements in the FAQ.

42.    The Delaware Chancery Court accepted the Company's arguments, and the breach of contract class action case was dismissed on October 2, 2024.

F.  The Market for AMC Securities

43.    The market for AMC securities, including APEs, was active, open and well-developed at all relevant times. AMC securities traded on the New York Stock Exchange ("NYSE") with high daily trading volume, extensive participation by retail and institutional investors, active market-makers, and broad dissemination of AMC information via news outlets, analyst reports, and social media platforms. As a result, the prices of AMC securities promptly incorporated publicly available information concerning the Company.

44.    Because Defendant's materially false and misleading statements were public and concerned AMC's business and the rights of AMC securities, Plaintiff is entitled, in the alternative to the actual reliance alleged herein, to a presumption of reliance under the fraud-on-the-market doctrine.

**COUNT I: Violation of Section 10(b) of the Exchange Act and Rule 10b-5**

45.    Plaintiff repeats and realleges each allegation above as if fully set forth herein.

46.    **Material Misrepresentation or Omission** – Defendant, through its August 18, 2022 Form 8-K and attached FAQ, made unqualified statements that each AMC Preferred Equity Unit ("APE") was "designed to have the same economic value as

a share of Class A Common Stock" and "the same voting rights as a share of common stock," and that, "in theory," common stock and APEs "should have similar market values" and the APE dividend "should be similar to a 2/1 stock split." These statements were materially false and misleading because the Certificate of Designations contained an undisclosed highly-technical loophole that allowed AMC to exclude APE holders from post-conversion distributions, including the Special Dividend. Defendant also omitted to disclose the existence and effect of these provisions, rendering its statements misleading.

47.     **Scienter** – Defendant acted with scienter in that it knew, or was reckless in not knowing, that the Certificate of Designations permitted such exclusion and that its public statements created a materially false impression of economic equivalence. The loophole was known to AMC's officers, directors and attorneys at the time the statements were made.  Further, as APE was the Company's only means of raising equity financing, the Company had a strong motive to mislead investors to support the marketability and acceptance of APEs.  Defendant's November 1, 2023 admission confirms that AMC knew or recklessly disregarded that its statements regarding economic equivalence were false when made.

48.     **In Connection with the Purchase or Sale of Securities** – Defendant's misstatements and omissions were made in connection with the issuance, purchase, and sale of APEs and AMC common stock, both of which are securities under the Exchange Act. The false assurances were disseminated in SEC filings and other public communications intended to influence the market for these securities.

49.     **Reliance** – Plaintiff's 3,250 shares of APE were acquired in the August 2022 stock split with respect to AMC common stock Plaintiff had purchased between

December 2020 and July 2022, before AMC made the statements described herein. Plaintiff became aware of AMC's August 18, 2022 public statements that APEs were "designed to have the same economic value" and "the same voting rights" as common stock.  In reliance on those statements, Plaintiff elected to continue holding his APE shares, rather than selling them, through the conversion and reverse stock split described herein, rather than divesting before the exclusion from the Special Dividend became apparent.  This reliance was reasonable in light of Defendant's unequivocal public statements and the absence of any disclosure that the Certificate of Designations contained provisions allowing exclusion of APE holders from such distributions.

50.    **Economic Loss** – Plaintiff suffered economic loss on August 28, 2023, when AMC delivered a Special Dividend of one share of common stock for every 7.5 shares held **exclusively** to the former holders of AMC common stock, and denied the same dividend to Plaintiff and other former holders of APEs. In addition, Plaintiff suffered losses when the market price of AMC securities was artificially inflated by Defendant's misrepresentations and subsequently declined.  As set forth herein, Plaintiff's 3,250 shares of APE, purchased for approximately $40,563, became approximately 325 shares of AMC common stock following the reverse stock split, which were valued at approximately $835 as of August 6, 2026, resulting in an unrealized loss of approximately $39,728.

51.    **Loss Causation** – Defendant's misrepresentations and omissions were the direct and proximate cause of Plaintiff's losses. The truth was revealed through AMC's November 1, 2023 motion to dismiss in the Delaware Chancery Court, in which AMC admitted that APE holders had no right to participate in the Special Dividend. This

disclosure corrected the market's prior misunderstanding, causing the value of APE-derived holdings to be diminished by the exclusion from the dividend.  The corrective nature of this disclosure included revealing Defendant's prior knowledge of the disparity in rights between APEs and common stock, facts that were previously concealed and not reasonably discoverable by investors.

52.    By reason of the foregoing, Defendant violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, and is liable to Plaintiff for damages in an amount to be proven at trial.

**COUNT II: Massachusetts Common-Law Fraud**

53.    Plaintiff repeats and realleges each allegation above as if fully set forth herein.

54.    **False Representation of Material Fact –** Defendant, through its August 18, 2022 Form 8-K and attached FAQ, represented that each APE was "designed to have the same economic value as a share of Class A Common Stock" and "the same voting rights as a share of common stock." These representations were false, in that the Certificate of Designations contained an undisclosed provision permitting AMC to exclude APE holders from post-conversion distributions, including the Special Dividend.

55.    **Scienter –** Defendant knew, or acted with reckless disregard for whether, its representations of economic equivalence were false when made, as set forth herein.

56.    **Intent to Induce Reliance –** Defendant made these representations with the intent that investors, including Plaintiff, would rely on them in making and maintaining investment decisions regarding APEs.

57. **Reasonable Reliance** – Plaintiff reasonably relied on Defendant's representations, as set forth herein, in electing to continue holding his APE shares rather than selling them.

58. **Damages** – As a direct and proximate result of Defendant's fraud, Plaintiff suffered damages as set forth herein, including the loss in value of his AMC shares received upon the reverse stock split.

59. By reason of the foregoing, Defendant is liable to Plaintiff for common-law fraud under Massachusetts law.

### COUNT III: Massachusetts Common-Law Negligent Misrepresentation

60. Plaintiff repeats and realleges each allegation above as if fully set forth herein.

61. **False Information Supplied in the Course of Business** – Defendant, in the course of its business and for the guidance of investors, supplied false information through its August 18, 2022 Form 8-K and attached FAQ, representing that each APE was "designed to have the same economic value as a share of Class A Common Stock" and "the same voting rights as a share of common stock."

62. **Failure to Exercise Reasonable Care** – Defendant failed to exercise reasonable care or competence in obtaining or communicating this information, in that it failed to disclose the provisions of the Certificate of Designations that permitted AMC to exclude APE holders from post-conversion distributions, including the Special Dividend.

63. **Justifiable Reliance** – Plaintiff justifiably relied on Defendant's representations, as set forth herein, in electing to continue holding his APE shares rather than selling them.

64.    **Pecuniary Loss –** As a direct and proximate result of Defendant's negligent misrepresentations, Plaintiff suffered pecuniary loss as set forth herein, including the loss in value of his AMC shares received upon the reverse stock split.

65.    By reason of the foregoing, Defendant is liable to Plaintiff for negligent misrepresentation under Massachusetts law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendant AMC Entertainment Holdings, Inc., as follows:

a.    Rescinding Plaintiff's purchase of the approximately 325 shares of AMC common stock at their original purchase price of approximately $40,563, plus statutory interest;

b.    In the alternative, awarding monetary damages to Plaintiff as determined by the Court;

c.    Awarding pre- and post-judgment interest;

d.    Awarding reasonable attorneys' fees and costs;

e.    Awarding such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated:  Suffolk County, New York
        August 10, 2026

                    Respectfully submitted,

                    _____
                    Frank Iacono
                    Iacono Law LLC
                    Attorney for Plaintiff
                    6 Donald Court West
                    Blue Point, NY 11715
                    917 685 0537
                    fiacono@iacono-law.com