**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROBERT SIMONS,<br><br>Plaintiff,<br><br>v.<br><br>AMC ENTERTAINMENT HOLDINGS, INC.,<br><br>Defendant. | Case No. 1:25-cv-09042-JLR<br><br>ORAL ARGUMENT REQUESTED |

# MEMORANDUM OF LAW IN SUPPORT OF AMC ENTERTAINMENT HOLDINGS, INC.'S MOTION TO DISMISS THE AMENDED COMPLAINT

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Counsel for Defendant AMC Entertainment Holdings, Inc.*

Dated: September 29, 2026

# TABLE OF CONTENTS


Page

PRELIMINARY STATEMENT ....................................................................................1

STATEMENT OF FACTS ........................................................................................4

A. The Parties ........................................................................................4

B. AMC Creates The APEs To Raise Much Needed Equity Capital ..........................5

C. AMC Ultimately Settles Expedited Litigation Seeking To Enjoin The Reverse Stock Split And Conversion ..........................7

D. AMC Makes The Settlement Payment ..........................9

E. AMC Successfully Defends Litigation From APE Holders Concerning The Settlement Payment ..........................10

F. Plaintiff Commences This Action ..........................11

ARGUMENT ..........................12

I. PLAINTIFF'S SECTION 10(b) CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS ..........................12

II. PLAINTIFF'S SECTION 10(b) CLAIM SHOULD BE DISMISSED BECAUSE IT IS AN IMPERMISSIBLE "HOLDER" CLAIM ..........................15

III. PLAINTIFF'S SECTION 10(b) CLAIM SHOULD BE DISMISSED ON MULTIPLE ADDITIONAL GROUNDS ..........................16

A. Plaintiff Fails To Adequately Allege An Actionable Material Misstatement Or Omission ..........................17

i. The Market And Economic Value Statements Are Protected Forward-Looking And Opinion Statements ..........................17

ii. Plaintiff Fails To Adequately Allege That The Market And Economic Value Statements Were False When Made ..........................19

iii. Plaintiff Fails To Adequately Allege That The Voting Rights Statement Was False When Made ..........................20

B. Plaintiff Fails to Adequately Allege Scienter ..........................21

i. Plaintiff's Motive And Opportunity Allegations Are Insufficient ..........................21

ii. Plaintiff's Recklessness Allegations Are Insufficient ..........................22

C. Plaintiff Fails To Adequately Allege Loss Causation ..........................23

D. Plaintiff Fails To Adequately Allege Cognizable Damages ..........................23

IV. PLAINTIFF'S COMMON LAW FRAUD CLAIM SHOULD BE DISMISSED ..........................25

V. PLAINTIFF'S COMMON LAW NEGLIGENT MISREPRESENTATION CLAIM SHOULD BE DISMISSED ....................25

A. Plaintiff Fails To Adequately Allege That AMC Supplied False Information ....................26

B. Plaintiff Fails To Adequately Allege That AMC Was Negligent In Failing To Discover The Falsity Of The Alleged Misstatements ....................27

CONCLUSION ....................27

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*,
398 F. Supp. 2d 244 (S.D.N.Y. 2005)....16

*In re AMC Ent. Holdings, Inc. S'holder Litig.*,
299 A.3d 501 (Del. Ch. 2023)....5, 7, 8, 9

*In re AMC Ent. Holdings, Inc. S'holder Litig.*,
2023 WL 5165606 (Del. Ch. Aug. 11, 2023), *aff'd*, 319 A.3d 310 (Del. 2024) ....6, 9

*In re AMC Ent. Holdings, Inc. S'holder Litig.*,
319 A.3d 310 (Del. 2024) ....10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....12

*Auctus Fund, LLC v. Endonovo Therapeutics, Inc.*,
2022 WL 2387883 (D. Mass. Feb. 28, 2022) ....25

*Balles v. Babcock Power Inc.*,
476 Mass. 565 (2017) ....25

*In re Bank of Am. AIG Disclosure Sec. Litig.*,
980 F. Supp. 2d 564 (S.D.N.Y. 2013), *aff'd*, 566 F. App'x 93 (2d Cir. 2014)....19

*In re Barrick Gold Corp. Sec. Litig.*,
341 F. Supp. 3d 358 (S.D.N.Y. 2018)....17, 18

*In re Beacon Assocs. Litig.*,
745 F. Supp. 2d 386 (S.D.N.Y. 2010)....24

*In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*,
995 F. Supp. 2d 291 (S.D.N.Y. 2014)....12, 13

*Bell Atl. Corp v. Twombly*,
550 U.S. 544 (2007)....12

*Bell v. Covidien LP*,
2023 WL 3006175 (D. Mass. Apr. 19, 2023) ....25, 26

*Blue Chip Stamps v. Manor Drug Stores*,
421 U.S. 723 (1975)....15, 16

*Champions League, Inc. v. Woodard*,
224 F. Supp. 3d 317 (S.D.N.Y. 2016)....................24, 25

*City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*,
450 F. Supp. 3d 379 (S.D.N.Y. 2020)....................22

*City of Omaha Police & Firefighters Ret. Sys. v. Cognyte Software Ltd.*,
2023 WL 6458930 (S.D.N.Y. Oct. 4, 2023)....................16

*City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc.*,
637 F.3d 169 (2d Cir. 2011)....................13

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005)....................23, 24

*Fiorillo v. Winiker*,
85 F. Supp. 3d 565 (D. Mass. 2015)....................25

*Friedman v. Mohasco Corp.*,
929 F.2d 77 (2d Cir. 1991)....................18

*Gavin/Solmonese LLC v. D'Arnaud-Taylor*,
68 F. Supp. 3d 530 (S.D.N.Y. 2014), *aff'd*, 639 F. App'x 664 (2d Cir. 2016)....................14, 15

*In re Gentiva Sec. Litig.*,
932 F. Supp. 2d 352 (E.D.N.Y. 2013)....................22

*Gordon Partners v. Blumenthal*,
2007 WL 431864 (S.D.N.Y. Feb. 9, 2007)....................16

*Gray v. Wesco Aircraft Holdings, Inc.*,
454 F. Supp. 3d 366 (S.D.N.Y. 2020)....................18

*Hallmark Inst. of Photography, Inc. v. CollegeBound Network, LLC*,
518 F. Supp. 2d 328 (D. Mass. 2007)....................27

*Iowa Pub. Emp.'s Ret. Sys. v. Deloitte & Touche LLP*,
919 F. Supp. 2d 321 (S.D.N.Y. 2013)....................5

*Izzo v. AMC Ent. Holdings, Inc.*,
145 S. Ct. 285 (2024)....................10

*Jackson v. Abernathy*,
960 F.3d 94 (2d Cir. 2020)....................22

*JFF Cecilia, LLC v. Weiner Ventures, LLC*,
2021 WL 2460518 (Mass. Super. Ct. Mar. 5, 2021)....................26

*Kruskall v. Sallie Mae Serv., Inc.*,
2016 WL 1056973 (D. Mass. Mar. 14, 2016)....27

*Lan Glob., Inc. v. Alchemy Telco Sols. US, LLC*,
2023 WL 5978296 (D. Mass. July 6, 2023)....26

*Lentell v. Merrill Lynch & Co.*,
396 F.3d 161 (2d Cir. 2005)....23

*Lipow v. Net1 UEPS Techs., Inc.*,
131 F. Supp. 3d 144 (S.D.N.Y. 2015)....19

*Long Miao v. Fanhua, Inc.*,
442 F. Supp. 3d 774 (S.D.N.Y. 2020)....21

*In re Lottery.com, Inc. Sec. Litig.*,
715 F. Supp. 3d 506 (S.D.N.Y. 2024)....21

*In re Manulife Fin. Corp. Sec. Litig.*,
276 F.R.D. 87 (S.D.N.Y. 2011)....23

*Maso Cap. Invs. Ltd. v. E-House (China) Holdings Ltd.*,
2024 WL 2890968 (2d Cir. June 10, 2024)....16, 17

*Merck & Co. v. Reynolds*,
559 U.S. 633 (2010)....13

*In re Micro Focus Int'l Plc Sec. Litig.*,
2020 WL 5817275 (S.D.N.Y. Sept. 29, 2020)....19

*Miller v. Chandra*,
2015 WL 1431075 (D. Mass. Mar. 27, 2015)....25

*Monroe Cnty. Emps.' Ret. Sys. v. YPF Sociedad Anonima*,
15 F. Supp. 3d 336 (S.D.N.Y. 2014)....19, 20

*In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*,
2010 WL 3239430 (S.D.N.Y. Aug. 17, 2010)....14

*N. Am. Cath. Educ. Programming Found., Inc. v. Cardinale*,
567 F.3d 8 (1st Cir. 2009)....25, 26

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
575 U.S. 175 (2015)....18, 19

*In re Omnicom Grp., Inc. Sec. Litig.*,
597 F.3d 501 (2d Cir. 2010)....23

*Pehlivanian v. China Gerui Advanced Materials Grp., Ltd.*,
153 F. Supp. 3d 628 (S.D.N.Y. 2015)....................17

*In re PXRE Grp., Ltd., Sec. Litig.*,
600 F. Supp. 2d 510 (S.D.N.Y. 2009)....................22

*Ramzan v. GDS Holdings Ltd.*,
2020 WL 1689772 (S.D.N.Y. Apr. 7, 2020)....................22

*In re Sanofi Sec. Litig.*,
87 F. Supp. 3d 510 (S.D.N.Y. 2015), *aff'd sub nom.*, *Tongue v. Sanofi*, 816 F.3d 199 (2d Cir. 2016)....................18

*Shah v. Morgan Stanley*,
2004 WL 2346716 (S.D.N.Y. Oct. 19, 2004)....................15

*Simons v. AMC Ent. Holdings, Inc.*,
341 A.3d 474 (Del. 2025)....................11

*Squeri v. Mount Ida Coll.*,
954 F.3d 56 (1st Cir. 2020)....................26

*In re Stratus Comput., Inc. Sec. Litig.*,
1992 WL 73555 (D. Mass. Mar. 27, 1992)....................26

*SUN, A Series of E Squared Inv. Fund, LLC v. Sundial Growers Inc.*,
2021 WL 4482276 (S.D.N.Y. Sept. 30, 2021)....................19

*In re Synchrony Fin. Sec. Litig.*,
988 F.3d 157 (2d Cir. 2021)....................17

*Tabak v. Canadian Solar Inc.*,
549 F. App'x 24 (2d Cir. 2013)....................22

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*,
531 F.3d 190 (2d Cir. 2008)....................21

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)....................21

*Turpel v. Canopy Growth Corp.*,
704 F. Supp. 3d 456 (S.D.N.Y. 2023)....................23, 24

*Villare v. Abiomed, Inc.*,
2021 WL 4311749 (S.D.N.Y. Sept. 21, 2021)....................21

*Vining v. Oppenheimer Holdings Inc.*,
2010 WL 3825722 (S.D.N.Y. Sept. 29, 2010)....................21

*In re Zyprexa Prods. Liab. Litig.*,
549 F. Supp. 2d 496 (E.D.N.Y. 2008) ....................15

**Statutes**

15 U.S.C. § 78(a) *et seq.* ....................3

15 U.S.C. § 78bb(a)(1)....................23

15 U.S.C. § 78j(b) ....................15

15 U.S.C. § 78u-4(b)(2) ....................21

15 U.S.C. § 78u-4(b)(3) ....................1

15 U.S.C. § 78u-5(i)(1)(C)....................17

28 U.S.C. § 1367(c)(3)....................24

28 U.S.C. § 1658(b)(1) ....................12

**Other Authorities**

Fed. R. Civ. P. 9(b) ....................1, 17, 25, 26

Fed. R. Civ. P. 12(b)(6)....................1, 12

Defendant AMC Entertainment Holdings, Inc. ("AMC" or the "Company") respectfully submits this memorandum of law in support of its motion to dismiss the First Amended Complaint, ECF No. 30 (the "Complaint" or "AC"), filed by Plaintiff Robert Simons ("Plaintiff"), pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure (the "Rules") and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b)(3) (the "PSLRA").

## PRELIMINARY STATEMENT

This action is an impermissible effort to rehash extensive litigation arising out of the 2023 reverse stock split (the "Reverse Stock Split") of AMC's common stock ("Common Stock") and the conversion of AMC's Preferred Equity Units ("APEs") into Common Stock (the "Conversion"). Despite more than three years of comprehensive litigation concerning these transactions, Plaintiff now brings this action in a misguided attempt to extract an individual damages award from AMC.

In August 2022, with almost no Common Stock left in its treasury, AMC created one billion APEs to allow it to raise equity and pay down debt during the COVID-19 pandemic, when movie theater attendance was at its nadir. Each share of AMC's then-approximately 517 million shares of Common Stock received a special dividend of one APE, and AMC added the other approximately 483 million APEs to its corporate treasury. AMC expected that the APEs and Common Stock would trade at similar prices in the market, but a large price differential developed between the two securities, which left AMC raising capital with much lower priced and, in turn, highly dilutive APEs. Accordingly, AMC recommended that its stockholders, which included holders of Common Stock and APEs, approve the Reverse Stock Split and Conversion, which would convert the APEs into Common Stock and provide AMC with a significant amount of authorized and unissued Common Stock that it could use to raise capital at non-discounted rates.

Litigation ensued. In February 2023, holders of AMC's Common Stock commenced a putative class action in the Delaware Court of Chancery, captioned *In re AMC Entertainment Holdings, Inc. Stockholder Litigation*, C.A. No. 2023-0215-MTZ (Del. Ch.) (the "Stockholder Litigation"), alleging that the proposed Reverse Stock Split and Conversion would harm holders of Common Stock, and seeking to enjoin the then-upcoming stockholder vote on the transactions. After expedited litigation, the parties to the Stockholder Litigation reached a proposed settlement in April 2023 that, if approved, would: (i) permit the Reverse Stock Split and Conversion to proceed; and (ii) provide holders of Common Stock with additional shares of Common Stock (the "Settlement"). In August 2023, the Settlement was approved by the Court of Chancery, and, later that same month, the additional shares were provided to holders of Common Stock in accordance with the Settlement (the "Settlement Payment"). The Settlement Payment was expressly contingent upon—and only payable after—the Reverse Stock Split and Conversion occurred, *i.e.*, after the APEs ceased to exist. In May 2024, the Delaware Supreme Court affirmed the approval of the Settlement, and, in October 2024, the U.S. Supreme Court declined to grant certiorari to review the approval of the Settlement.

More litigation ensued. In August 2023, on the eve of the completion of the Reverse Stock Split and Conversion, a putative class action on behalf of APE holders was filed in the Delaware Court of Chancery, captioned *Simons v. AMC Entertainment Holdings, Inc.*, C.A. No. 2023-0835-MTZ (Del. Ch.) (the "Delaware Simons Litigation").[1] That action alleged that the Settlement ran afoul of the Certificate of Designations (the "COD") that governed the APEs prior to the Conversion because APE holders did not also receive the Settlement Payment. In October 2024,

[1] The plaintiff in the Delaware Simons Litigation was Michael Simons; Plaintiff here is Robert Simons.

the Court of Chancery dismissed the Delaware Simons Litigation in its entirety and with prejudice, holding that former APE holders were not entitled to the Settlement Payment, and that making the Settlement Payment only to holders of Common Stock did not breach the terms of the COD because the COD only provided former APE holders with rights *before* the Conversion occurred and the Settlement Payment was made *after* the Conversion. In May 2025, the Delaware Supreme Court affirmed the dismissal of the Delaware Simons Litigation.

Now, more than *four years* after the creation of the APEs and more than *three years* after the Settlement Payment, Plaintiff here attempts to repurpose these stale events into a securities fraud claim under the Securities and Exchange Act of 1934, 15 U.S.C. § 78(a) *et seq.* (the "Exchange Act") and Massachusetts common law claims for fraud and negligent misrepresentation. Plaintiff alleges that AMC made "assurances regarding [the] economic equivalence" of APEs and Common Stock, AC ¶ 2, that were false and misleading because the COD "contained a highly-technical loophole allowing AMC to exclude APE holders from distributions occurring after [the] [C]onversion"—*i.e.*, the Settlement Payment. *Id.* ¶ 4. But that recycled theory is wrong, has already been rejected by other courts, and cannot serve as the basis for Plaintiff's claims. Accordingly, the Complaint should be dismissed in its entirety and with prejudice for several reasons.

*First*, Plaintiff's Section 10(b) claim is time-barred under the Exchange Act's two-year statute of limitations. A reasonably diligent plaintiff would have known well before October 31, 2023—*i.e.*, two years before Plaintiff filed his original complaint—that APE holders had no right to participate in the Settlement Payment. *See* Section I, *infra*.

*Second*, Plaintiff nevertheless lacks standing to assert a claim under Section 10(b) because he seeks a recovery based on his decision to "continue holding his APE shares, rather than selling

them." AC ¶ 49. Such "holder claims," which seek a recovery based on the decision to hold securities rather than buying or selling them, are not cognizable under Section 10(b). *See* Section II, *infra*.

*Third*, even if Plaintiff's Section 10(b) claim was not time-barred (it is) and he had standing to assert it (he does not), Plaintiff's Section 10(b) claim still fails to state a claim upon which relief can be granted for several reasons, including that Plaintiff fails to adequately allege: (i) an actionable misstatement or omission; (ii) that AMC acted with the requisite fraudulent intent (*i.e.*, scienter); (iii) loss causation, as his alleged "corrective" disclosure—a filing from the Delaware Simons Litigation—could not (and did not) reveal any new information to the market; and (iv) a cognizable damages theory, as Plaintiff's damages theory, which seeks recovery as of the date of the Settlement Payment and/or through August 6, 2026, is wholly untethered to his theory of fraud. *See* Section III, *infra*.

*Fourth*, Plaintiff's Massachusetts common law fraud claim fails to state a claim for the same reasons that Plaintiff's Section 10(b) claim fails to state a claim. *See* Section IV, *infra*.

*Finally*, Plaintiff's Massachusetts common law negligent misrepresentation claim fails because Plaintiff does not allege that AMC supplied false information to investors or that the Company lacked reasonable care in acquiring or communicating that information. *See* Section V, *infra*.

## STATEMENT OF FACTS

### A. The Parties

Plaintiff alleges that he is a "former holder of [APEs]," and a resident of Massachusetts. AC at 1, ¶ 11.

AMC is "the world's largest theatrical exhibition company." AMC's September 6, 2023 Prospectus Supplement (Ex. 1)[2] at S-7. AMC is a Delaware corporation with its principal executive offices located in Leawood, Kansas. AC ¶ 12. AMC's Common Stock trades on the New York Stock Exchange under the ticker symbol "AMC." *Id.*

### B. <u>AMC Creates The APEs To Raise Much Needed Equity Capital</u>

With the onset of the global COVID-19 pandemic, the second quarter of 2020 was "the most challenging quarter in the 100-year history of AMC." AMC's August 6, 2020 Form 8-K and Exhibit 99.1 (Ex. 2) at 5. To stave off the threat of bankruptcy, "AMC sold nearly all of the Company's remaining authorized shares of Common Stock to raise new funding." AC ¶¶ 13–14; *see also In re AMC Ent. Holdings, Inc. S'holder Litig.*, 299 A.3d 501, 509 (Del. Ch. 2023) ("*AMC I*").

Given the importance of equity raises to AMC at that time, the Company twice asked its stockholders to approve an amendment to its Certificate of Incorporation that would allow AMC to issue additional shares of Common Stock. AC ¶ 14. AMC's board of directors (the "Board") ultimately withdrew both proposals, because "many" stockholders told AMC "to wait," and the Company expected "[m]any yes" and "many no" votes on the proposals. AMC's July 6, 2021 Schedule 14A, Definitive Additional Materials (Ex. 3) at 2; *see also AMC I*, 299 A.3d at 510. Left with no means by which to raise equity capital, and facing potential insolvency, on August 4, 2022, AMC announced the creation of one billion APEs, declared a special dividend of one APE for each of its approximately 517 million then-outstanding shares of Common Stock, and created

[2] "Ex. __" refers to the exhibits attached to the accompanying Declaration of Matthew S. Connors. On this Motion, the Court may consider facts from the Complaint, "statements or documents incorporated" therein, "documents filed with the SEC," and documents plaintiff "relied [on] in bringing the suit." *Iowa Pub. Emp.'s Ret. Sys. v. Deloitte & Touche LLP*, 919 F. Supp. 2d 321, 330 (S.D.N.Y. 2013).

approximately 483 million APEs for its treasury, which it could use to raise equity capital and pay its debt obligations. AC ¶ 15; AMC's August 18, 2022 Form 8-K and Exhibit 99.1 (Ex. 4) at 2–3.

Prior to the Conversion, the APEs were governed by the COD, which was publicly disclosed. *See* AMC's August 4, 2022 Form 10-Q and Exhibit 3.1 (Ex. 5) at 71–75. The COD clearly set forth the rights attendant to the APEs. For example, Section III of the COD provided that APEs were entitled to any "cash dividends or distributions" paid to holders of Common Stock to the extent those distributions were paid "prior to the Conversion." *Id.* at 72–73 (COD § III). Section VI of the COD similarly provided APEs with "Anti-Dilution Adjustments" that were made "prior to the Conversion." *Id.* at 73 (COD § VI).

AMC successfully deployed the APEs to raise much needed equity capital and stave off financial collapse. But despite the Company's expectation that the APEs and Common Stock "should have similar market values," a large price differential eventually developed between the two securities. Ex. 4 at 4; *see also In re AMC Ent. Holdings, Inc. S'holder Litig.*, 2023 WL 5165606, at *43 (Del. Ch. Aug. 11, 2023) ("*AMC II*"), *aff'd*, 319 A.3d 310 (Del. 2024) ("*AMC III*"). As a result, AMC was left with a highly discounted and, thus, highly dilutive security with which to raise capital and pay down its debt. AMC's May 8, 2023 Form 8-K, Exhibit 99.1, and Exhibit 99.2 (Ex. 6) at 48; *see also AMC II*, 2023 WL 5165606, at *43. AMC therefore recommended that its stockholders approve the Reverse Stock Split and Conversion, which would convert the APEs into Common Stock and provide AMC with a meaningful amount of authorized and unissued Common Stock that it could use to raise capital and pay down debt at non-discounted rates.

## C. AMC Ultimately Settles Expedited Litigation Seeking To Enjoin The Reverse Stock Split And Conversion

On February 20, 2023, the Stockholder Litigation, which sought to enjoin the stockholder vote on the Reverse Stock Split and Conversion, was filed in the Delaware Court of Chancery. AC ¶ 32; *see also AMC I*, 299 A.3d at 514–15. Plaintiffs in the Stockholder Litigation alleged that, through the creation of the APEs, the Board was "using its fiduciary powers to circumvent the current stockholders' voting rights," and that the Reverse Stock Split and Conversion would cause "significant dilution and economic harm" to the holders of Common Stock. Verified Stockholder Class Action Complaint, dated February 23, 2023, filed in *Munoz v. Aron*, C.A. No. 2023-0216-MTZ (Del. Ch.) (operative complaint in the Stockholder Litigation) (Ex. 7) ¶¶ 1, 165.

On February 27, 2023, the court in the Stockholder Litigation entered a status quo order, which, among other things, permitted a March 14, 2023 stockholder vote on the Reverse Stock Split and Conversion to proceed, but prevented AMC from effectuating the results of that vote pending the court's ruling on plaintiffs' then-anticipated preliminary injunction motion. *See generally* Ex. 6 at 43–66; *see also AMC I*, 299 A.3d at 516. On March 14, 2023, the Reverse Stock Split and Conversion were approved by the Company's stockholders. *See* Ex. 6 at 50; *see also AMC I*, 299 A.3d at 516.

Counsel for Plaintiff in this action, Frank Iacono, sought to intervene in the Stockholder Litigation. On March 1, 2023, Mr. Iacono filed an Emergency Motion to Intervene in the Stockholder Litigation, which the court denied. *See* Frank Iacono's Emergency Motion to Intervene, dated March 1, 2023, filed in the Stockholder Litigation (Ex. 8); Letter Decision Denying Mr. Iacono's Motion to Intervene, dated March 15, 2023, filed in the Stockholder Litigation (Ex. 9). Mr. Iacono's second motion to intervene, filed on May 26, 2023, was also denied. Frank Iacono's Second Motion to Intervene, dated May 26, 2023, filed in the Stockholder

Litigation (Ex. 10); Plaintiffs' Opposition to Frank Iacono's Second Motion to Intervene, dated June 9, 2023, filed in the Stockholder Litigation (Ex. 11); Report and Recommendation of Special Master Regarding Frank Iacono's Second Motion to Intervene, dated June 23, 2023, filed in the Stockholder Litigation (Ex. 12).

On April 2, 2023, the parties to the Stockholder Litigation executed a term sheet, reflecting an agreement-in-principle to settle the Stockholder Litigation. *See* Ex. 6 at 50; *see also AMC I*, 299 A.3d at 517. The proposed Settlement Payment was designed to compensate holders of Common Stock for the alleged harm that the Reverse Stock Split and Conversion would cause them:

> The parties' pending Settlement contemplates that following and subject to AMC's completion of the conversion and reverse split, the Company will issue to its existing Common Stockholders as of immediately prior to the conversion one additional share of Common Stock for every seven-and-one-half (7.5) shares of Common Stock held as of the issuance. The conversion and reverse split require a ten (10) day notice period under NYSE rules.

Unopposed Motion to Lift the *Status Quo* Order Due to the Parties' Proposed Settlement, dated April 3, 2023, filed in the Stockholder Litigation (Ex. 13) ¶ 5. The Settlement Payment was explicitly "contingent upon [the] lifting of the status quo order and the conversion and reverse split being consummated." *Id.* ¶ 23. Also on April 3, 2023, AMC filed a Form 8-K with the U.S. Securities and Exchange Commission (the "SEC") announcing the proposed Settlement, which expressly disclosed that "[t]he obligation to make the Settlement Payment *only arises if* the Status Quo Order has been lifted *and the Conversion has taken place*"—*i.e.*, the APEs are no longer in existence. AMC's April 3, 2023 Form 8-K (Ex. 14) at 2 (emphasis added); *see also* AC ¶ 33.

On April 27, 2023, the parties to the Stockholder Litigation submitted to the court a Stipulation of Settlement (the "Stipulation"), which explained that the Settlement Payment would be paid "following the Conversion." Ex. 6 at 22. The Notice of Pendency of Stockholder Class

Action and Proposed Settlement, Settlement Hearing, and Right To Appear (the "Notice")—which was distributed "on AMC's investor relations website, on AMC's Twitter account, via a Form 8-K, over *PR Newswire*, and on the Depository Trust Company's Legal Notice System" (*AMC II*, 2023 WL 5165606, at *16; *see* Ex. 6 at 26–27)—similarly provided that the Settlement Payment would be issued "*following [the] Conversion*." Ex. 6 at 57 (emphasis added).

The proposed Settlement of the Stockholder Litigation garnered extraordinary engagement from AMC's stockholder base, which culminated in a two-day settlement hearing before the Court of Chancery on June 29–30, 2023. *AMC I*, 299 A.3d at 520–21. On July 21, 2023, the Court of Chancery declined to approve the proposed Settlement on the grounds that the release contained in the Stipulation was overly broad. *Id.* at 507–08. The next day, the parties to the Stockholder Litigation submitted an addendum to the Stipulation which narrowed the release and asked the Court of Chancery to reconsider the proposed Settlement. Addendum to Stipulation and Agreement of Compromise, Settlement, and Release, dated July 22, 2023, filed in the Stockholder Litigation (Ex. 15). On August 11, 2023, the Court of Chancery approved the proposed Settlement with the revised release, which allowed the Reverse Stock Split and Conversion to proceed. Order Certifying Class and Approving Settlement, dated August 11, 2023, filed in the Stockholder Litigation (Ex. 16); *see also AMC II*, 2023 WL 5165606, at *44. Before the market opened on August 14, 2023, AMC filed a Form 8-K with the SEC, stating that the Reverse Stock Split would occur on August 24, 2023, the Conversion would occur on August 25, 2023, and the Settlement Payment would be paid on August 28, 2023. AC ¶ 35; AMC's August 14, 2023 Form 8-K (Ex. 17) at 5.

### D. <u>AMC Makes The Settlement Payment</u>

The Reverse Stock Split, Conversion, and Settlement Payment occurred in the exact sequence that AMC disclosed. The Reverse Stock Split occurred on August 24, 2023, and the

Conversion occurred on August 25, 2023. AC ¶ 35; Ex. 1 at S-7, S-8. Also on August 25, 2023, AMC filed a Certificate of Elimination of Series A Convertible Participating Preferred Stock, which eliminated the COD that had governed the APEs, given that the APEs were no longer in existence. *See* AMC's August 25, 2023 Form 8-K and Exhibit 3.1 (Ex. 18) at 2, 4–5. The Settlement Payment was issued three days later, on August 28, 2023. AC ¶ 35.

Subsequent challenges to the Court of Chancery's approval of the Settlement failed. On May 22, 2024, the Delaware Supreme Court affirmed the Court of Chancery's approval of the Settlement. *AMC III*, 319 A.3d 310. On October 7, 2024, the U.S. Supreme Court denied an objector's petition for a writ of certiorari seeking further review of the Settlement. *Izzo v. AMC Ent. Holdings, Inc.*, 145 S. Ct. 285 (2024).

### E. AMC Successfully Defends Litigation From APE Holders Concerning The Settlement Payment

On August 14, 2023, a former APE holder commenced the Delaware Simons Litigation, which sought to undo the Settlement Payment. *See* AC ¶ 37. That action asserted claims for breach of contract and breach of the implied covenant of good faith and fair dealing based on Sections III and VI of the COD, and sought an "award [of] monetary damages" to the former APE holders "to adjust for the [alleged] dilution" caused by the Settlement Payment. Verified Amended Complaint, dated December 26, 2023, filed in the Delaware Simons Litigation (Ex. 19) ¶¶ 1, 76–87. On November 1, 2023 and February 16, 2024, respectively, AMC filed opening briefs in support of its motions to dismiss the initial and amended complaints in the Delaware Simons Litigation. Opening Brief in Support of Defendant's Motion to Dismiss, dated November 1, 2023, filed in the Delaware Simons Litigation (Ex. 20); Opening Brief in Support of Defendant's Motion to Dismiss the Verified Amended Complaint, dated February 16, 2024, filed in the Delaware Simons Litigation (Ex. 21). AMC argued that the Settlement Payment did not breach the COD, or

any implied covenant, because the COD only provided former APE holders with rights *before* the Conversion occurred, whereas the Settlement Payment was made *after* the Conversion and was expressly contingent upon the Conversion occurring. *See generally* Ex. 21. In his opposition, plaintiff in the Delaware Simons Litigation argued that AMC violated the COD because, when "[r]ead . . . in its entirety, the COD is intended to place the preferred and common stockholders in parity for all distributions," as was purportedly evidenced by AMC's public statement that "each AMC [APE] unit . . . is designed to have the same economic value as a share of Class A Common Stock"—*i.e.*, relying on one of the very statements that Plaintiff here challenges. Plaintiff's Answering Brief in Opposition to Defendant's Motion to Dismiss, dated April 12, 2024, filed in the Delaware Simons Litigation (Ex. 22) at 29.

On October 2, 2024, the Court of Chancery granted AMC's motion to dismiss the Delaware Simons Litigation in full and with prejudice, holding that: (i) former APE holders were not entitled to the Settlement Payment; and (ii) the Settlement Payment did not breach the COD or the implied covenant because (a) the COD only provided former APE holders with rights *before* the Conversion occurred, and (b) the Settlement Payment was made *after* the Conversion. *See* Transcript of Oral Argument and Rulings of the Court on Defendant's Motion to Dismiss, dated October 2, 2024, filed in the Delaware Simons Litigation (Ex. 23) at 62, 67–69. On May 8, 2025, the Delaware Supreme Court affirmed the dismissal. *Simons v. AMC Ent. Holdings, Inc.*, 341 A.3d 474, 474 (Del. 2025).

### F. <u>Plaintiff Commences This Action</u>

On October 31, 2025—*two-and-a-half years* after the Settlement was first announced—Plaintiff filed his initial complaint in this action (a purported class action complaint). *See* ECF No. 6. On May 4, 2026, AMC filed a motion opposing Plaintiff's appointment as lead plaintiff and Iacono Law LLC as lead counsel. *See* ECF No. 21. On June 8, 2026, Plaintiff informed the

Court that he intended to pursue this action on an individual—and not a class-wide—basis, and withdrew his requests for lead plaintiff and lead counsel appointment. *See* ECF No. 26. On August 10, 2026, Plaintiff filed the instant Complaint. *See* ECF No. 30.

Plaintiff challenges three statements made by AMC on August 18, 2022. Two of those statements concern the APEs' economic and market value (the "Market and Economic Value Statements"):

- "[E]ach APE was 'designed to have the same economic value as a share of Class A Common Stock.'"
- "[I]n theory, the common stock and AMC Preferred Equity unit should have similar market values and the impact of the AMC Preferred Equity unit dividend should be similar to a 2/1 stock split."

The third statement concerns the APEs' voting rights (the "Voting Rights Statement"):

- "[E]ach APE was . . . 'designed to have the same voting rights as a share of common stock.'"

AC ¶ 3 (quoting Ex. 4).

**ARGUMENT**

To avoid dismissal pursuant to Rule 12(b)(6), Plaintiff must "state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), which requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court need not accept legal conclusions, naked assertions, conclusory statements, or implausible inferences. *Id.*

## I. PLAINTIFF'S SECTION 10(b) CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS

"[A] private right of action" under Section 10(b) of the Exchange Act "may be brought not later than . . . 2 years after the discovery of the facts constituting the violation." 28 U.S.C. § 1658(b)(1); *see also In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*, 995 F. Supp. 2d

291, 299 (S.D.N.Y. 2014). The limitations period begins to run at the earlier of when (i) "the plaintiff did in fact discover" or (ii) "a reasonably diligent plaintiff would have discovered the facts constituting the violation." *Merck & Co. v. Reynolds*, 559 U.S. 633, 637 (2010). A fact is deemed "discovered" when "a reasonably diligent plaintiff would have sufficient information about that fact to adequately plead it in a complaint." *City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 175 (2d Cir. 2011).

A reasonably diligent plaintiff would have known well before October 31, 2023—*i.e.*, two years before Plaintiff filed his original complaint—that former APE holders had no right to participate in the Settlement Payment, which was designed to *compensate holders of Common Stock* for alleged harm that they would purportedly suffer due to the Conversion of APEs into Common Stock, and which was *expressly payable only after the Conversion occurred and the APEs ceased to exist*. Indeed, a series of public disclosures and events concerning the Settlement Payment make clear that a reasonably diligent plaintiff would have been on inquiry notice by as early as April 2023 and certainly no later than August 2023 that APE holders would not receive the Settlement Payment:

- April 3, 2023: "*[F]ollowing and subject to AMC's completion of the conversion and reverse split*, the Company *will issue to its existing Common Stockholders* as of immediately prior to the conversion one additional share of Common Stock for every seven-and-one-half (7.5) shares of Common Stock held as of the issuance." Ex. 13 ¶ 5.

- April 3, 2023: "The obligation to make the Settlement Payment *only arises if* the Status Quo Order has been lifted *and the Conversion has taken place*." Ex. 14 at 2 (emphasis added).

- April 27, 2023: "In consideration for the full and final release, settlement, dismissal, and discharge of any and all of the Released Plaintiffs' Claims . . . AMC, on behalf of Defendants, shall, promptly *following the Conversion, issue the Settlement Payment to* the record *holders of Common Stock* as of the Settlement Class Time (after giving effect to the Reverse Stock Split)." Ex. 6 at 22 (emphasis added).

- April 27, 2023: "Record *holders of Common Stock* as of the Settlement Class Time will be issued the Settlement Payment directly, promptly *following Conversion*." *Id.* at 57 (emphasis added).

- May 8, 2023: "In consideration for the full and final release, settlement, dismissal, and discharge of any and all of the Released Plaintiffs' Claims . . . AMC, on behalf of Defendants, shall, promptly *following the Conversion*, issue the Settlement Payment *to the record holders of Common Stock* as of the Settlement Class Time (after giving effect to the Reverse Stock Split)." *Id.* at 22 (emphasis added).

- May 8, 2023: "*Record holders of Common Stock* as of the Settlement Class Time will be issued the Settlement Payment directly, promptly *following Conversion*." *Id.* at 57 (emphasis added).

- August 14, 2023: "*Following and contingent upon the Reverse Stock Split and the Conversion*, AMC will be required to make the Litigation Settlement Payment *to all record holders of AMC common stock* (not just the plaintiffs) as of a record date . . . . *Once the Conversion occurs*, which is scheduled to occur on August 25, 2023, AMC will issue *to the record holders of the AMC common stock* the additional shares of AMC common stock in the Litigation Settlement Payment on or after August 28, 2023." Ex. 17 at 5 (emphasis added).

- August 28, 2023: The Company makes the Settlement Payment only to holders of Common Stock—*not APE holders*. AC ¶ 35.

Plaintiff's counsel's repeated (and failed) attempts to intervene in the Stockholder Litigation only further underscore that a diligent plaintiff would have been on notice of the facts underlying this action. *See supra* at 7–8; *see also In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*, 2010 WL 3239430, at *7–8 (S.D.N.Y. Aug. 17, 2010) (that plaintiff's counsel had filed an earlier action "involv[ing] similar allegations" was relevant in determining that plaintiff's claims were time-barred).

The commencement of the Delaware Simons Litigation on August 14, 2023 also would have put Plaintiff on inquiry notice that he was not receiving the Settlement Payment to which he now claims an entitlement. *See* AC ¶ 37. It is well-settled that "a reasonably diligent plaintiff would undertake an investigation based on [t]he filing of related lawsuits." *Gavin/Solmonese LLC*

*v. D'Arnaud-Taylor*, 68 F. Supp. 3d 530, 536 (S.D.N.Y. 2014), *aff'd*, 639 F. App'x 664 (2d Cir. 2016). The Delaware Simons Litigation was filed based on "nearly identical" allegations to those alleged here more than two years before Plaintiff filed his Complaint, rendering Plaintiff's Section 10(b) claim untimely. *In re Zyprexa Prods. Liab. Litig.*, 549 F. Supp. 2d 496, 536 (E.D.N.Y. 2008); *see Shah v. Morgan Stanley*, 2004 WL 2346716, at *10 (S.D.N.Y. Oct. 19, 2004) (prior lawsuits "with the same subject matter as the present complaint" supported a finding that "plaintiff was on inquiry notice").

Plaintiff's allegation that the "fraudulent nature of AMC's earlier statements was finally revealed" on November 1, 2023, when AMC moved to dismiss the Delaware Simons Litigation, is flat wrong and ignores *months of repeated* public disclosure that the Settlement Payment would be paid only to holders of AMC's Common Stock—not to holders of APEs—and only after the Conversion occurred, *i.e.*, after the APEs ceased to exist. Plaintiff's allegation that the alleged fraud—that he, in his capacity as a holder of APEs, would not be paid the Settlement Payment—was only revealed on November 1, 2023 also ignores that the Settlement Payment was made on August 28, 2023 to eligible holders of Common Stock. AC ¶ 6. If anything should have alerted Plaintiff to the fact that he was not receiving the Settlement Payment, it was the payment date coming and going and Plaintiff receiving nothing.

## II. PLAINTIFF'S SECTION 10(b) CLAIM SHOULD BE DISMISSED BECAUSE IT IS AN IMPERMISSIBLE "HOLDER" CLAIM

Plaintiff's Section 10(b) claim also should be dismissed as an impermissible "holder" claim. Liability arises under Section 10(b) only to the extent a speaker "use[s] or employ[s]" a "manipulative or deceptive device or contrivance" "*in connection with the purchase or sale of a[] security.*" 15 U.S.C. § 78j(b) (emphasis added). For this reason, "the plaintiff class for purposes of a private damage action under [Section] 10(b) and Rule 10b-5 [is] limited to actual purchasers

and sellers of securities." *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 730–31 (1975).

Here, Plaintiff admits that he is pursuing quintessential "holder" claims—*i.e.*, Plaintiff alleges that his claims arise out of his decision to "*continue holding* his APE shares, rather than selling them." AC ¶ 49 (emphasis added); *see also id.* ¶ 1. Simply put, a decision to "hold or refrain from trading" securities does not give rise to a Section 10(b) claim. *Gordon Partners v. Blumenthal*, 2007 WL 431864, at *9 (S.D.N.Y. Feb. 9, 2007).

Nor can Plaintiff claim that AMC's distribution of APEs as a dividend constitutes a "purchase" that would somehow confer standing. *See* AC ¶ 27 (incorrectly suggesting that the "purchase price" of the 3,250 shares of APE was $40,563). "[P]laintiffs who . . . [simply] receive[] . . . stock as a dividend . . . d[o] not engage in a 'purchase' within the scope of Section 10(b)." *In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*, 398 F. Supp. 2d 244, 260 (S.D.N.Y. 2005). As the Complaint correctly identifies, "APE units were issued to the then-current holders of [AMC] Common Stock," including Plaintiff, "as a special dividend." AC ¶ 22; *see also id.* ¶ 27 (similar). Indeed, Plaintiff "made no election whether or not to receive [the APEs] . . . nor had any choice as to how m[any] [APEs] to receive in the dividend" but, rather, "passively received a dividend" as a result of being a holder of AMC Common Stock, further undermining his ability to bring a Section 10(b) claim. *Adelphia*, 398 F. Supp. 2d at 260; *see also City of Omaha Police & Firefighters Ret. Sys. v. Cognyte Software Ltd.*, 2023 WL 6458930, at *4 (S.D.N.Y. Oct. 4, 2023) (similar).

## III. PLAINTIFF'S SECTION 10(b) CLAIM SHOULD BE DISMISSED ON MULTIPLE ADDITIONAL GROUNDS

Even if Plaintiff's Section 10(b) claim was not barred by the statute of limitations and an impermissible "holder" claim, it still should be dismissed for failure to plead multiple requisite elements. To state a Section 10(b) claim, Plaintiff must allege "'(1) a material misrepresentation

or omission . . . ; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.'" *Maso Cap. Invs. Ltd. v. E-House (China) Holdings Ltd.*, 2024 WL 2890968, at *2 (2d Cir. June 10, 2024). As demonstrated below, Plaintiff's Section 10(b) claim independently should be dismissed because Plaintiff fails to plead an actual misstatement or omission, scienter, loss causation, and damages.

### A. Plaintiff Fails To Adequately Allege An Actionable Material Misstatement Or Omission

Plaintiff must plead the existence of a material misstatement or omission[3] consistent with the exacting standards of Rule 9(b) and the PSLRA "by stating the circumstances constituting fraud with particularity." *Pehlivanian v. China Gerui Advanced Materials Grp., Ltd.*, 153 F. Supp. 3d 628, 642 (S.D.N.Y. 2015). Rule 9(b) requires that Plaintiff identify the "who, what, when, where, and how" of the alleged misconduct, as well as "the reasons or factual basis for the plaintiff's belief that the [challenged] statement[s] [are] misleading." *Id.* He does not.

#### i. The Market And Economic Value Statements Are Protected Forward-Looking And Opinion Statements

***Forward-Looking Statements.*** AMC's statements that the APEs were "designed to have the same economic value" or "should have similar market values" as Common Stock are paradigmatic forward-looking statements. *See* 15 U.S.C. § 78u-5(i)(1)(C) (a forward-looking statement is "a statement of future economic performance"); *In re Barrick Gold Corp. Sec. Litig.*,

[3] While the Complaint refers to "misstatements *and omissions*," AC ¶¶ 46, 48, 51 (emphasis added), Plaintiff does not proceed on an omissions-based theory. "'[A]n omission is actionable under the securities laws only when the corporation is subject to a duty to disclose the omitted facts.'" *In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 167 (2d Cir. 2021). Here, Plaintiff has identified no duty to disclose, nor has he identified any "statement" made by AMC "that would be 'inaccurate, incomplete, or misleading' without further context." *Id.*

341 F. Supp. 3d 358, 375 (S.D.N.Y. 2018) (statements that "'project[] results in the future'" are "'plainly forward-looking'"). The PSLRA prohibits reliance on forward-looking statements as a basis for liability when the statement is either "accompanied by meaningful cautionary language" or "the plaintiff fails to prove that [it] was made with actual knowledge that it was false or misleading." *Gray v. Wesco Aircraft Holdings, Inc.*, 454 F. Supp. 3d 366, 385 (S.D.N.Y. 2020).

Here, the Market and Economic Value Statements are protected under both prongs of the PSLRA's safe harbor. *First*, AMC expressly warned investors that the "market price[]" for APEs may be "extreme[ly] volatil[e]" and could cause holders to experience "substantial losses." Ex. 5 at 36, 66; *see* Ex. 4 at 5 (incorporating by reference AMC's risk factor disclosures for its most recent Forms 10-K and 10-Q). *Second*, Plaintiff fails to plead "proof of knowing falsity." *Wesco*, 454 F. Supp. 3d at 381. The Complaint advances no allegations (let alone particularized ones) that AMC had knowledge that the statements were false at the time they were made, the source of such knowledge, or when such knowledge was acquired. *See* Section III.B, *infra*.

***Opinion Statements.*** Both of the Market and Economic Value Statements are also protected opinion statements. *See Friedman v. Mohasco Corp.*, 929 F.2d 77, 79 (2d Cir. 1991) (statement that shares "will have a market value . . . equal to $36.50" "expressed no guarantee of market value and referred only to . . . opinion of expected value"); *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 531 (S.D.N.Y. 2015) (statements expressing "expectations for the future" constituted opinions), *aff'd sub nom.*, *Tongue v. Sanofi*, 816 F.3d 199 (2d Cir. 2016). Statements of opinion are actionable only if the speaker (i) "did not hold the belief [] professed," (ii) "supplied . . . untrue" "supporting fact[s]," or (iii) omitted information that made the statement "misleading to a reasonable investor." *Sanofi*, 816 F.3d at 210 (citing *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 186–87 (2015)). Meeting the *Omnicare* standard "is

no small task for an investor," and Plaintiff has not remotely cleared this high bar. *Omnicare*, 575 U.S. at 194. Plaintiff offers no particularized facts demonstrating that AMC did not genuinely believe that the APEs would trade at a similar price to its Common Stock. *See In re Micro Focus Int'l Plc Sec. Litig.*, 2020 WL 5817275, at *14 (S.D.N.Y. Sept. 29, 2020) (no actionable misstatement where plaintiff failed to plead any "facts showing [the] statements" did not reflect the defendant's "true expectation at that time"). Nor does Plaintiff plausibly allege that the challenged opinions were misleading by omission. *See supra* n.3.

**ii. Plaintiff Fails To Adequately Allege That The Market And Economic Value Statements Were False When Made**

Plaintiff has also failed to adequately allege particularized facts establishing that the Market and Economic Value Statements "w[ere] false at the time [they were] made." *SUN, A Series of E Squared Inv. Fund, LLC v. Sundial Growers Inc.*, 2021 WL 4482276, at *6 (S.D.N.Y. Sept. 30, 2021). Plaintiff's sole pled basis for alleged falsity is that "the [COD] contained an undisclosed highly technical loophole that allowed AMC to exclude APE holders from post-Conversion distributions, including the [Settlement Payment]." AC ¶ 46. Not so.

As a threshold matter, the supposed "loophole" in the COD was publicly disclosed to investors on August 4, 2022. *See* Ex. 5 at 71–75. Nor was it a secret that the Settlement Payment would only go to holders of Common Stock pre-Conversion. *See supra* at 8–10, 13–15. Where, as here, the "'allegedly undisclosed material information is in fact readily accessible in the public domain, . . . a defendant may not be held liable for failing to disclose that information.'" *In re Bank of Am. AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d 564, 576 (S.D.N.Y. 2013), *aff'd*, 566 F. App'x 93 (2d Cir. 2014); *see also Lipow v. Net1 UEPS Techs., Inc.*, 131 F. Supp. 3d 144, 168–69 (S.D.N.Y. 2015) ("A defendant does not have a duty . . . to disclose information where it is equally available [or] widely reported. . . ."); *Monroe Cnty. Emps.' Ret. Sys. v. YPF Sociedad Anonima*,

15 F. Supp. 3d 336, 355 (S.D.N.Y. 2014) (no misrepresentation where the "alleged omissions [that rendered the statements materially misleading] were either fully disclosed or matters of public knowledge").

Moreover, the fact that the COD limited APE holders to distributions made prior to any Conversion to Common Stock—*i.e.*, when those securities were still APEs—does *nothing* to render the Market and Economic Value Statements false or misleading. In other words, there is no inconsistency between the Market and Economic Value Statements, the terms of the COD, and the Settlement Payment. At bottom, and as held by the Delaware Court of Chancery, the COD "puts clear, unambiguous, and comprehensive boundaries on the APE units." Ex. 23 at 68. That APE holders did not receive a distribution made to holders of Common Stock *post-Conversion* does not render AMC's statements about the APEs *pre-Conversion* false or misleading.

#### iii. Plaintiff Fails To Adequately Allege That The Voting Rights Statement Was False When Made

Plaintiff has pled no facts explaining why the Voting Rights Statement was false when made. Rather, the COD expressly provided that, "[p]rior to the Conversion Date, [APE] [h]olders are entitled to cast the number of votes equal to the number of whole shares of Common Stock into which the shares of Preferred Stock held by such holder are then convertible . . . on all matters presented to the holders of Common Stock for approval, voting together with the holders of Common Stock as one class." Ex. 5 at 73 (COD § IV(a)). Notably, the Complaint is entirely silent as to why AMC's description of the APEs' voting rights was false when made. Plaintiff does not (and cannot) explain how the distribution of the Settlement Payment to holders of Common Stock *post-Conversion* somehow renders this statement about *pre-Conversion voting rights* false or misleading.

### B. <u>Plaintiff Fails to Adequately Allege Scienter</u>

Plaintiff's Section 10(b) claim is also subject to dismissal because Plaintiff fails to adequately allege facts giving rise to a "strong inference" of scienter. 15 U.S.C. § 78u-4(b)(2). A "strong inference" of scienter is "more than merely plausible or reasonable" but, rather, "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). To plead scienter as to a corporate defendant, "the pleaded facts must create a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter." *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*, 531 F.3d 190, 195 (2d Cir. 2008). Because Plaintiff attempts to plead scienter "'without [raising the inference] with regard to a specific individual defendant,'" he must rely on a theory of corporate scienter. *In re Lottery.com, Inc. Sec. Litig.*, 715 F. Supp. 3d 506, 557 n.11 (S.D.N.Y. 2024). Such a theory is permitted only in "exceedingly rare instances." *Id.*

#### i. Plaintiff's Motive And Opportunity Allegations Are Insufficient

To plead scienter through motive and opportunity, Plaintiff must allege that AMC "'benefited in some concrete and personal way from the purported fraud.'" *Villare v. Abiomed, Inc.*, 2021 WL 4311749, at * 21 (S.D.N.Y. Sept. 21, 2021). Frequent indicia of scienter—such as firsthand accounts from confidential witnesses, insider trading, and whistleblowers—are entirely absent here. *See Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 797 (S.D.N.Y. 2020) (noting that "plaintiffs often rely, at least in part, 'on information attributed to confidential witnesses'"); *Vining v. Oppenheimer Holdings Inc.*, 2010 WL 3825722, at *8 (S.D.N.Y. Sept. 29, 2010) ("'Unusual insider sales . . . may permit an inference of . . . scienter.'").

Instead, Plaintiff alleges that "the Company had a strong motive to mislead investors to support the marketability and acceptance of APEs" because "APE was the Company's only means

of raising equity financing." AC ¶ 47. But it is well-established that "a desire to raise capital . . . is insufficient to establish motive." *Tabak v. Canadian Solar Inc.*, 549 F. App'x 24, 28 (2d Cir. 2013). "[I]f scienter could be pleaded on [the basis of raising capital] alone, virtually any company that attempted to raise capital, especially in a woeful economic climate, would face specious securities fraud allegations." *In re PXRE Grp., Ltd., Sec. Litig.*, 600 F. Supp. 2d 510, 533 (S.D.N.Y. 2009); *see also Ramzan v. GDS Holdings Ltd.*, 2020 WL 1689772, at *4 (S.D.N.Y. Apr. 7, 2020) ("[A]ctively raising capital is a goal shared by all issuers and, without more, is insufficient to support an inference of scienter.").

**ii. Plaintiff's Recklessness Allegations Are Insufficient**

Failing to plead motive, Plaintiff next claims that "AMC knew or recklessly disregarded that its statements regarding economic equivalence were false when made" because AMC's "officers, directors[,] and attorneys" "knew, or w[ere] reckless in not knowing, that the [COD]" "exclude[d] APE holders from post-conversion distributions, including the [Settlement Payment]." AC ¶¶ 46–47. To plead conscious misbehavior or recklessness, Plaintiff must allege "'conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.'" *City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*, 450 F. Supp. 3d 379, 421 (S.D.N.Y. 2020). Plaintiff's vague and conclusory reference to unnamed "officers, directors[,] and attorneys," AC ¶ 47, is insufficient to raise a "strong inference" of corporate scienter. *In re Gentiva Sec. Litig.*, 932 F. Supp. 2d 352, 383–84 (E.D.N.Y. 2013); *see also Jackson v. Abernathy*, 960 F.3d 94, 98–99 (2d Cir. 2020) (generalized allegations that employees "knew of problems" and warned "unidentified senior executives," without any "connective tissue between those employees and the alleged misstatements," are insufficient to plead corporate scienter).

### C. Plaintiff Fails To Adequately Allege Loss Causation

Plaintiff's Section 10(b) claim is also subject to dismissal because Plaintiff fails to adequately allege "that the defendant's misrepresentation (or other fraudulent conduct) proximately caused the plaintiff's economic loss." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005). Plaintiff alleges that the "truth" purportedly was "revealed through AMC's November 1, 2023 motion to dismiss in the [Delaware Simons Litigation], in which AMC admitted that APE holders had no right to participate in the [Settlement Payment]." AC ¶ 51. But "[t]hese allegations do not amount to a corrective disclosure . . . because they do not reveal to the market the falsity of" the challenged statements. *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 175 n.4 (2d Cir. 2005). AMC's arguments in the Delaware Simons Litigation "d[id] not reveal any new information" to the market, as the Settlement Payment was consistently and publicly described as payable only to *holders of AMC Common Stock*, not holders of APEs, *after the Conversion, when the APEs no longer existed*. *In re Manulife Fin. Corp. Sec. Litig.*, 276 F.R.D. 87, 104 (S.D.N.Y. 2011); *see also In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 511–13 (2d Cir. 2010) (disclosure did not establish loss causation where it "characterize[ed] . . . already-public information"); *see supra* at 8–10, 13–15.

### D. Plaintiff Fails To Adequately Allege Cognizable Damages

Plaintiff's Section 10(b) claim is also subject to dismissal because Plaintiff fails to adequately allege damages. Section 28(a) of the Exchange Act limits recovery to "actual damages." 15 U.S.C. § 78bb(a)(1). Under the securities laws, "[c]ognizable damages . . . are based on the drop in a stock's price *occasioned by the revelation to the market of facts revealing the falsity of the issuer's earlier representations*." *Turpel v. Canopy Growth Corp.*, 704 F. Supp. 3d 456, 466–67 (S.D.N.Y. 2023) (emphasis added). Indeed, it is "'standard operating procedure' for courts . . . to parse the market's reaction on 'relevant dates . . . [of] disclosure' to determine the

extent of artificial inflation in the stock price—and thus the amount of each plaintiff's damages." *Id.* at 468.

Here, Plaintiff attempts to recoup: (i) an alleged "economic loss on August 28, 2023 when AMC delivered [the Settlement Payment]" to holders of Common Stock "and denied the same dividend to Plaintiff," AC ¶ 50; and (ii) alleged "losses when the market price of AMC securities was artificially inflated by Defendant's misrepresentations and subsequently declined," leading to Plaintiff's shares being "valued at approximately $835 as of August 6, 2026." *Id.* Notwithstanding the fact that Plaintiff has not incurred any damage because he never purchased his APE shares—but, rather, was issued those shares as part of a special dividend in connection with his ownership of Common Stock, *see* Section II, *supra*—Plaintiff's two damages theories are not cognizable under federal securities law. Neither theory alleges that the APEs' "share price fell significantly *after the truth became known*" on November 1, 2023. *Dura Pharms.*, 544 U.S. at 347 (emphasis added). As such, Plaintiff's damages theories are wholly untethered to his alleged corrective disclosure and, thus, the Complaint should be dismissed.

* * *

Should the Court dismiss Plaintiff's Section 10(b) claim on any one of the foregoing grounds, it should decline to exercise supplemental jurisdiction over Plaintiff's Massachusetts common law claims and dismiss those claims in their entirety. *See* 28 U.S.C. § 1367(c)(3) (the Court "may decline to exercise supplemental jurisdiction" once the Court "has dismissed all claims over which it has original jurisdiction"). "'In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well.'" *In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 435 (S.D.N.Y. 2010); *see also Champions League, Inc. v. Woodard*, 224 F. Supp. 3d 317, 326 (S.D.N.Y. 2016) ("Given the dismissal of Plaintiff's federal securities fraud claim, the

Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims"); *Auctus Fund, LLC v. Endonovo Therapeutics, Inc.*, 2022 WL 2387883, at *5 (D. Mass. Feb. 28, 2022) (similar). Regardless, for the reasons set forth below, Plaintiff's claims for common law fraud and negligent misrepresentation fail to state a claim upon which relief can be granted.

## IV. PLAINTIFF'S COMMON LAW FRAUD CLAIM SHOULD BE DISMISSED

To plead a claim for common law fraud under Massachusetts law, Plaintiff must plead "'[i] a false representation [ii] of a matter of material fact [iii] with knowledge of its falsity [iv] for the purpose of inducing [action] thereon, and [v] that the plaintiff relied upon the representation as true and acted upon it to his [or her] damage.'" *Balles v. Babcock Power Inc.*, 476 Mass. 565, 573–74 (2017). State law claims for fraud are "subject to Rule 9(b)'s heightened pleading requirement." *Fiorillo v. Winiker*, 85 F. Supp. 3d 565, 574 (D. Mass. 2015). Because the elements of a common law fraud claim are "essentially the same" as those for a Section 10(b) claim, Plaintiff's common law fraud claim fails for the same reasons that his Section 10(b) claim fails. *Miller v. Chandra*, 2015 WL 1431075, at *9 (D. Mass. Mar. 27, 2015); *see* Section III, *supra*.

## V. PLAINTIFF'S COMMON LAW NEGLIGENT MISREPRESENTATION CLAIM SHOULD BE DISMISSED

Under Massachusetts law, to state a claim for negligent misrepresentation, Plaintiff must plead that AMC:

> [i] in the course of [its] business, [ii] supplie[d] false information for the guidance of others [iii] in their business transactions, [iv] causing and resulting in pecuniary loss to those others [v] by their justifiable reliance upon the information, and [vi] with failure to exercise reasonable care or competence in obtaining or communicating the information.

*Bell v. Covidien LP*, 2023 WL 3006175, at *7 (D. Mass. Apr. 19, 2023). Here, Plaintiff's negligent misrepresentation claim sounds in fraud because it relies on the same core allegations as Plaintiff's fraud claims, and it therefore is subject to the heightened pleading requirements of Rule 9(b). *See*

*N. Am. Cath. Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 15 (1st Cir. 2009) (negligent misrepresentation claim subject to Rule 9(b) "where the core allegations effectively charge fraud"); *In re Stratus Comput., Inc. Sec. Litig.*, 1992 WL 73555, at *6 (D. Mass. Mar. 27, 1992) ("This district has clearly held that Rule 9(b) applies to claims of negligent misrepresentation."). Moreover, even if that heightened pleading standard did not apply (it does), Plaintiff still would fail to state a claim.

**A. <u>Plaintiff Fails To Adequately Allege That AMC Supplied False Information</u>**

Plaintiff has failed to adequately allege that AMC "supplie[d] false information." *Bell*, 2023 WL 3006175, at *7. As explained *supra*, *see* Section III.A, the Market and Economic Value Statements—regarding the expected future value of APE units—cannot be construed as conveying an objectively verifiable fact and, thus, cannot form the basis of a negligent misrepresentation claim. *See JFF Cecilia, LLC v. Weiner Ventures, LLC*, 2021 WL 2460518, at *2 (Mass. Super. Ct. Mar. 5, 2021) ("A statement on which liability for misrepresentation may be based must be one of fact, not of expectation, estimate, opinion, or judgment.").

Moreover, the Complaint fails to plead that any of the challenged statements were false at the time they were made. *See supra*, Section III.A; *Squeri v. Mount Ida Coll.*, 954 F.3d 56, 70 (1st Cir. 2020) (dismissing both fraud and negligent misrepresentation claims where "plaintiffs have failed to plead any false statement made by any of the defendants"); *see also Lan Glob., Inc. v. Alchemy Telco Sols. US, LLC*, 2023 WL 5978296, at *12 (D. Mass. July 6, 2023) (dismissing negligent misrepresentation claim where plaintiff "fail[ed] to identify factual allegations in the [complaint] that could support an inference that [defendant's] alleged promises and predictions were . . . false").

### B. Plaintiff Fails To Adequately Allege That AMC Was Negligent In Failing To Discover The Falsity Of The Alleged Misstatements

Plaintiff has also failed to adequately allege that AMC lacked reasonable care in obtaining or communicating the information in the challenged statements. The reasonable care inquiry asks "'whether the speaker was negligent in failing to discover the falsity of his or her statements.'" *Kruskall v. Sallie Mae Serv., Inc.*, 2016 WL 1056973, at *5 (D. Mass. Mar. 14, 2016). Here, Plaintiff merely asserts that AMC "failed to exercise reasonable care" because it "failed to disclose the provisions of the [COD] that permitted AMC to exclude APE holders from post-conversion distributions, including the [Settlement Payment]." AC ¶ 62. But as discussed *supra* at 19–20, the COD was publicly disclosed. Even if Plaintiff could adequately allege falsity, Plaintiff's negligent misrepresentation claim fails because the Complaint contains "no allegation" that AMC "could have known" that its statements were untrue at the time they were made. *Hallmark Inst. of Photography, Inc. v. CollegeBound Network, LLC*, 518 F. Supp. 2d 328, 332 (D. Mass. 2007).

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety and with prejudice.

Dated: September 29, 2026

Respectfully submitted,

*/s/ John A. Neuwirth*

John A. Neuwirth
Joshua S. Amsel
Matthew S. Connors
Tanner S. Stanley
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Email: john.neuwirth@weil.com
joshua.amsel@weil.com
matthew.connors@weil.com
tanner.stanley@weil.com

*Counsel for Defendant AMC Entertainment Holdings, Inc.*

**CERTIFICATION OF WORD COUNT**

Pursuant to Local Rule 7.1(c) and Rule 3.C of the Court's Individual Rules of Practice in Civil Cases, I hereby certify that the foregoing Memorandum of Law in Support of AMC Entertainment Holdings, Inc.'s Motion to Dismiss the Amended Complaint has a total word count of 8,742 words, as calculated by Microsoft Word, excluding the caption, table of contents, table of authorities, signature block, and this certification and, thus, complies with the 8,750-word limit for memorandum of law in support of motions.

*/s/ John A. Neuwirth*
John A. Neuwirth